IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LOUIS KEITH HARRIS, ) | |
| ) | No. 2:11-cv-01590-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | **ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the magistrate judge's Report and Recommendation (R&R) that this court affirm the Administrative Law Judge's (ALJ) decision denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). Plaintiff filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the ALJ's decision.

## I. BACKGROUND

Plaintiff Louis Keith Harris filed for DIB and SSI on April 3, 2003, alleging disability since October 30, 2002 due to pain, numbness, thoracic outlet syndrome, irritable bowel syndrome, and stiffness in his arms, hands, and fingers. Tr. 13, 47-49, 59, 199, 207. His applications were denied initially and upon reconsideration. Tr. 13. Harris filed a timely request for a hearing, which was held on November 28, 2005. Id. On June 29, 2006, the ALJ issued a decision finding Harris not disabled. Tr. 13-22.

In reaching this decision, the ALJ employed a five-step sequential evaluation process to determine whether Harris was "disabled" within the meaning of the Social

1

Security Regulations.[1]  See 20 C.F.R. §§ 404.1520, 416.920.  The sequential process requires the ALJ to examine whether the claimant:  (1) is engaging in substantial gainful activity; (2) has a "severe impairment"; (3) has an impairment that meets the criteria listed in 20 C.F.R. part 404, subpart P, appendix 1; (4) has the residual functional capacity (RFC) to perform past relevant work; and (5) can perform any other work based on vocational factors that include RFC, age, education, and work experience.  See 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).

The Appeals Council denied review, rendering the ALJ's decision that of the Commissioner.  Tr. 5-7.  Harris then filed a civil action seeking review of the ALJ's decision.  Tr. 276.  Magistrate Judge Bruce Howe Hendricks issued an R&R on February 6, 2008, recommending that the decision denying Harris's claim be reversed and remanded based on the ALJ's failure to adequately apply the framework for assessing complaints of pain set forth in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).  Tr. 287-91.  On March 10, 2008, this court adopted the R&R and remanded the case pursuant to sentence four of 42 U.S.C § 405(g) for further administrative proceedings.  Tr. 274-75.

After a second administrative hearing was held, the ALJ issued a decision on July 18, 2008 finding Harris not disabled.  Tr. 254-66.  On appeal, Magistrate Judge Hendricks issued an order[2] on March 11, 2010, reversing the ALJ's decision and remanding the case for a second time pursuant to sentence four of 42 U.S.C. § 405(g).  Tr. 400-11.  The magistrate judge found that the ALJ again failed to adhere to the review process outlined in Craig, as the "[ALJ's] second decision ultimately appear[ed] no more

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[2] The parties consented to a magistrate judge entering an order of judgment in the case.  Tr. 400.

compliant than the first." Mag. Order, Mar. 11, 2010, at 9-10; Tr. 408-09. The magistrate judge wrote,

> On remand, therefore, the defendant is ORDERED to ensure that only the plaintiff's credibility is considered in light of this Court's instruction concerning *Craig*. The defendant, of course, is permitted to pursue any issues implicated or affected by that renewed determination, to wit, the plaintiff's residual functional capacity. Both parties are tasked with advocating on behalf of the mandate of this Order. To the extent the matter returns under circumstances where the mandate of this Order has been disregarded and there is evidence that the plaintiff did not champion it, the Court may affirm the decision of the ALJ, even where it might otherwise have been inclined to find continuing legal error.

Mag. Order, Mar. 11, 2010, at 11; Tr. 410. On May 12, 2010, the Appeals Council vacated the second ALJ decision and remanded the case for further administrative proceedings. Tr. 412-14. The Appeals Council instructed the ALJ to limit review of the case to "application of the first step in the evaluation of the claimant's pain." Tr. 361.

On November 9, 2010, Harris testified in a third administrative hearing. Tr. 459-88. The ALJ then issued a decision on December 9, 2010 finding Harris not disabled. Tr. 360-74. At the first step of the sequential analysis, the ALJ found that Harris had not engaged in substantial gainful activity since the alleged onset date of October 30, 2002. Tr. 363. Second, the ALJ found that Harris had the following severe impairments: degenerative disc disease, thoracic outlet syndrome, and carpal tunnel syndrome. Id. At the third step, the ALJ determined that Harris's severe impairments did not rise to the level of an impairment or combination of impairments that met or medically equaled one of the listed impairments found at 20 C.F.R. part 404, subpart P, appendix 1. Id. At steps four and five, the ALJ found that Harris was unable to perform past relevant work but had the RFC to perform a range of sedentary work with certain limitations. Tr. 363-64, 372. The ALJ also found that Harris's "medically determinable impairments could be

expected to produce some pain but could not reasonably be expected to cause the type and severity of symptoms alleged." Tr. 365. Ultimately, considering Harris's vocational factors, the ALJ determined that Harris could perform jobs existing in significant numbers in the national economy and found Harris not disabled. Tr. 373-74.

The Appeals Council denied review and Harris filed another civil action. Tr. 342-44. On June 20, 2012, Magistrate Judge Hendricks issued an R&R recommending that the ALJ's December 9, 2010 decision be affirmed. See Mag. R&R, June 20, 2012, at 8. Harris filed objections on July 23, 2012.

Harris has a high school education and previous work experience as a truck driver and electrician's helper. Tr. 215, 326. He states that he last worked in October 2002 and left his job because of neck pain. Tr. 219. On August 8, 2002, Harris saw Dr. Douglas E. Holford, an orthopedist, for complaints of pain radiating down his shoulders, chest, and arms. Tr. 127, 258. An MRI found mild central disc bulging at C5-6 but no direct impingement. Tr. 126. On November 4, 2002, Dr. Holford performed a C5-6 discectomy with fusion and plating. Tr. 122. Following the surgery, a cervical spine MRI performed on May 12, 2003 returned unremarkable results, showing well-maintained disc spaces and no indication of cervical disc herniation. See Tr. 155-56.

Harris continued to complain of parasthesias in early 2003. Tr. 119-20. Electrodiagnostic studies indicated thoracic outlet syndrome and carpal tunnel syndrome, and Harris was referred to Dr. Jack Ratliff for treatment. Tr. 111, 116-18. Harris underwent physical therapy but, in April 2003, still had complaints of pain. Tr. 163. Dr. Holford reported that Harris's physical therapy with a TENS unit "seemed to help." Tr.

158. Harris completed physical therapy on May 14, 2004 and achieved two of his four short term goals but none of his long term goals. Tr. 144.

On July 21, 2003, Dr. Ratliff performed a left rib resection on Harris in an attempt to alleviate pain caused by thoracic outlet syndrome. Tr. 139-40, 163. Following the surgery, Dr. Ratliff noted that the operation "seemed to go very well technically" but that Harris complained of little improvement in his level of pain. Tr. 160. As a result, Dr. Ratliff found that a right rib resection would not be practical. Id.

Dr. Richard A. Eisenberg, a neurologist, performed a one-time evaluation on February 14, 2004. Tr. 224. Harris told Dr. Eisenberg that he continued to suffer from persisting neck and upper extremity pain. Tr. 164. Dr. Eisenberg opined that Harris was "completely disabled from his previous job as a truck driver" and "has persistent pain [that] may interfere even with sedentary activities." Id. Still, Dr. Eisenberg found that Harris could "move upper and lower extremities strongly against resistance." Id.

Beginning in January 2005, Harris was treated by Dr. Kimberly Lewis, a chiropractor. Tr. 180, 198. Dr. Lewis treated Harris twice a week for several months. Tr. 223. Harris stated that the alignments and adjustments helped his back and neck "for short periods, but not long." Id. In August 2005, Dr. Lewis filled out a Clinical Assessment of Pain, indicating that Harris's pain was "profound and intractable" and "virtually incapacitates this individual." Tr. 177.

Beginning in August 2006, Harris visited the Free Medical Clinic of Aiken County. He primarily complained of irritable bowel syndrome, carpel tunnel syndrome, neck, back, and hand pain, and numbness, but also mentioned tiredness, depression, allergies, and negative side effects from medications. Tr. 304-10. Although pain

medications were available through the clinic, Harris admitted in 2009 that he also took "street drugs" for pain relief. Tr. 449. On July 1, 2008, Harris began treatment at the Community Medical Clinic of Aiken County and complained of pain and other stressors. Tr. 450-51.

In July 2010, Dr. Eric Schleuter, a physician at the Margaret J. West Community Health Center, completed a Physical Capacities Evaluation Form and indicated serious limitations in Harris's ability to sit, stand, and walk in an eight hour workday, as well as in other activities. Tr. 457-58. Despite beginning a treatment relationship with Harris in 2009, Dr. Schleuter opined that Harris's limitations began in 2000. Tr. 371.

The third ALJ decision denying benefits was issued on December 9, 2010. Dr. Holford provided a Physical Capacities Evaluation Form dated August 16, 2011 and a letter dated August 29, 2011. In the letter, Dr. Holford states that Harris "had an operation on November 4, 2002, at that time he started having the restrictions placed upon him[, and h]e never recovered significantly from the surgery." Pl.'s Br. Ex. A.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence has been defined . . . as more than a scintilla, but less than [a] preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). In other words, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456.

## III.   DISCUSSION

Harris objects to the magistrate judge's R&R on two grounds. First, he argues that it was "fundamentally unfair" for the magistrate judge to restrict the scope of the third administrative hearing "from a point frozen in time" by excluding new opinion evidence offered after the second ALJ decision. Pl.'s Obj. 1-2. Harris asks the court to consider whether the new evidence offered before and after the supplemental hearing bolsters Harris's credibility. Id. at 3. Second, Harris argues that the ALJ's findings regarding his complaints of pain are still in error and are not supported by substantial evidence. Id. at 3-4. The court takes these objections in turn.

### A.   Consideration of New Evidence

Harris first objects that the magistrate judge unfairly limited the scope of remand. On remand, the ALJ considered new evidence presented prior to and during the

7

supplemental hearing. During the hearing, Harris's attorney broadly asked Harris, "Since [the second administrative hearing], . . . what would you -- how would you summarize how your symptoms and conditions ha[ve] progressed since that time?" Tr. 465. Harris testified that since his last hearing, he had more pain in his chest, back, neck, and arms. See Pl.'s Br. 20. At the conclusion of the hearing, the ALJ stated, "I'm going to consider all that you've told me. I've got more medical evidence. I've already reviewed that, but I'm going to go back and re-review in light of what you've told me today." Tr. 487. This additional evidence included the Physical Capacities Evaluation Form prepared by Dr. Schleuter on July 2, 2010. See Tr. 463. The ALJ's decision on December 9, 2010 recounts Harris's continuing medical treatment and his testimony at the supplemental hearing. See Tr. 364 (discussing Harris's testimony "at the most recent hearing"); Tr. 367-68 (discussing Harris's visits to the Free Medical Clinic of Aiken County and Margaret J. Weston Community Health Center in 2009). It also provides a detailed analysis of the July 2, 2010 Physical Capacities Evaluation Form prepared by Dr. Schleuter and gives specific reasons for his assessment of that form. Tr. 371.

In turn, the magistrate judge relied on evidence dated after the second remand. See Mag. R&R, June 20, 2012, at 7 (citing Tr. 443, 448 (patient encounter forms from March and April of 2010 at the Community Medical Clinic of Aiken County)). The court finds that the evidence of Harris's alleged disability was appropriately taken into consideration by the ALJ and magistrate judge. Moreover, it was within the magistrate judge's inherent authority to restrict the scope of remand. Finally, although Harris could not have objected to the scope of Judge Hendricks' March 11, 2010 remand order, he could have voiced his concerns in the brief filed with this court on January 23, 2012

rather than in objection to the magistrate judge's most recent R&R.  See Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

Harris presents further medical evidence—a Physical Capacities Evaluation Form prepared by Dr. Holford on August 16, 2011and a letter from Dr. Holford dated August 29, 2011—as an attachment to his January 2012 brief.  See Pl.'s Br. Ex. A.  Harris asks the court to "consider this evidence in adjudicating [his] appeal." Id. at 35.  Assuming *arguendo* that this evidence falls within Magistrate Judge Hendricks' dictate to the parties to only pursue issues implicated by the ALJ's most recent credibility determination, the court notes that it cannot weigh the evidence provided by Harris; it is the duty of an ALJ to make findings of fact and credibility determinations and resolve conflicts in the evidence.  Hays, 907 F.3d at 1456.  Instead, the court can decide whether to remand under sentence six of 42 U.S.C. § 405(g) on the basis of newly discovered evidence so long as four prerequisites are met.  Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).

The court need not engage in a detailed analysis of these factors because Harris has not shown good cause for consideration of a report obtained eight years after Dr. Holford treated Harris.  Although Harris cites an inability to afford subsequent treatment, Harris's attorney notes that last year, Dr. Holford told Harris he would see him at little or no cost.  Pl.'s Br. 12-13 n.1.  If Dr. Holford was willing to see Harris on a reduced fee basis in 2011, the court finds no reason why he would not have done so prior to the ALJ's December 9, 2010 opinion or Appeals Council's May 12, 2011 denial of review, had Harris asked.

9

For these reasons, the court finds that the limited scope of remand was not "fundamentally unfair" and that a remand is not warranted on the basis of Harris's new evidence.

### B.  Credibility Analysis

Harris next objects to the magistrate judge's finding that the ALJ's credibility analysis is in compliance with established law and supported by substantial evidence. "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process."  Craig, 76 F.3d at 594; see SSR 96-7p.  The first step requires a threshold showing of objective evidence of a medical impairment that could reasonably be expected to produce pain in the amount and degree alleged by the claimant.  Id.  The focus is on objective evidence of a condition that could reasonably be expected to produce the pain alleged rather than objective evidence of pain.  Only after this threshold obligation is met does the evaluation turn to the intensity and persistence of the claimant's pain and its effect on the claimant's ability to work.  Id. at 595.

Here, the ALJ made specific reference to his duty on remand to focus on the application of the first prong of the Craig test, and then carried out that duty.  At the first step, he found that although the objective medical evidence of Harris's impairments could be expected to produce some pain, there was "very limited" objective evidentiary support for pain the amount and degree alleged by Harris.  Tr. 365, 368.  The ALJ then went on to provide specific reasons for discounting Harris's subjective statements regarding the intensity and persistence of that alleged pain.  See Tr. 365-69.  While the ALJ's decision is not a model of clarity in that it sometimes blends steps one and two of

10

the Craig framework, the court agrees with the magistrate judge that the ALJ applied the controlling law and that his decision is supported by substantial evidence.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R and **AFFIRMS** the Commissioner's decision denying benefits.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 27, 2012**
**Charleston, South Carolina**